*Court of Common Pleas, Dauphin County, August 30th, 1864.*

EARLEY *v.* WITHERS.

When personal property, claimed to be sold, is left in the possession of the
vendor, this is evidence of fraud *per se*, and the vendee has no title as against
the creditors of the seller. An engine fastened to the soil is part of the
realty; but when the parties have treated it as personal property, they are
estopped from denying it. If personal property is given to secure a debt,
and all that it sells for above that is to belong to the original owner, his
interest may be sold for the benefit of his creditors.

BY THE COURT.—The application for a new trial in this case
is mainly founded on the alleged misdirection of the court to the
jury in matters of law, and a mis-trial of the cause on account of
a mistake of all parties as to the character of the property in con-
troversy, it having been treated throughout as personal effects,
whereas it was in truth real estate. We instructed the jury that
the sale of the steam-engine and boilers in dispute by Moses to
Amos Earley, was fraudulent in law under the circumstances
proved, mainly because possession did not accompany and follow
the sale, and the property sold continued in the possession of
the vendor until after the levy. Were we right in this instruc-
tion? The engine was the propelling power in a mill belonging to
Moses Earley, and situated on his own land. The mill was burned
down, and the whole steam machinery was left in the ruins as
originally placed. Amos Earley was security for Moses in a
certain note amounting to $1000, or had signed it for his accom-
modation; it was a just debt, and on or about the 19th of March,
1863, Moses sold Amos the engine and boilers to pay said debt,
with an agreement that all it would bring above the amount
should belong to the vendor, was to be refunded to him, Moses.
This sale was made at Norfolk, Virginia. Amos Earley returned
home, and on the 8th or 10th of April caused a roof to be put over
the engine to preserve it from the weather, and the connecting-pipe
between the engine and boilers to be detached and laid alongside
of the engine, which was oiled and left in its position. No part
of the machinery was removed until shortly before the November
Term following, when the real estate on which it was situated
was about to be sold by the sheriff. On the 15th of May, 1863,
this machinery was levied on as the personal property of Moses
Earley by Withers; and on the first day of June following Amos
Earley notified the sheriff that he claimed it. This led to the pres-
ent trial under the sheriff's interpleader act.

In reviewing our instructions on the trial we must leave out of
view all of the evidence tending to show that the sale was colorable;
the declarations of Amos Earley that he could not sell the property
without first communicating with Moses; the offers of the latter
to sell it in Virginia after the alleged sale to Amos, with the other

[Earley v. Withers.]

facts in proof tending to show actual fraud, or that no sale had been made, as these were properly questions for the jury. The charge was peremptory; and this sale was declared fraudulent in law from its character as proved by the vendor, and because that possession did not accompany and follow the sale. After a careful review of the law as settled in this State, we still continue of the same opinion. Unlike the decisions in many of the other States, our courts have held that the want of delivery of possession of personal property sold was not to be treated as mere *evidence of fraud*, but is fraudulent *per se*, to be so declared by the courts. The few cases supposed to be exceptions are full recognitions of the rule. The saw-logs or hewed timber in Chase *v.* Ralston (6 Casey, 539), were not delivered, because there was no snow, without which they could not be moved. Delivery took place as far as practicable. But had those logs laid over another winter the decision might have been different. So with the piles of boards in Haynes *v.* Hunsicker (2 Casey, 58), and the raft of boards in Cadbury *v.* Nolen (5 Barr, 326). This engine was quite as susceptible of delivery as the hides in a process of tanning in Clow *v.* Woods (5 S. & R. 275), or in Pritchett *v.* Jones (4 Rawle, 263), in fact much more so, as the hides might be essentially injured by an arrest of the process before completion. It is true this sale took place some two hundred miles distant from the property, and actual delivery could therefore not be expected; but, like the sale of a ship at sea, possession should be taken as soon as she came into port; here as soon as Amos Earley returned home. Instead of which we find that on the 8th or 10th of April following he placed a roof over this machinery, with the manifest intention of preserving it where it stood on the land of Moses Earley, and no attempt was made to remove it. True, the connecting-pipes were detached and laid alongside of the engine, but that would not operate as a delivery actual or symbolical. But symbolical delivery is not what the law requires, but actual; and the exclusive possession must be taken by and remain with the vendor. Where articles are bulky and heavy a reasonable time for removal must be allowed; but if there was time to place a roof over the property and detach the pipes, there was time sufficient for its removal. There certainly was ample time between the 19th day of March, when the sale was made, and the 18th of May, when the sheriff levied. We were therefore bound to declare the sale void, as was done in Brown *v.* Keller (7 Wright, 104), and a host of other cases in this State. Fixtures situated as were those in controversy, are a portion of the realty, and will pass by a sale thereof; but the action of the parties in interest may impress on them a different character. We have no complaint here from the judgment creditors; they set up no claim, nor does the purchaser at sheriff's sale, as the fixtures were removed before

it occurred. Both Moses and Amos Earley treated them as personal, the one in selling, the other in buying, notwithstanding the judgments. In fact, it is impossible to doubt but that they were thus bought and sold for the payment of this debt, because it was not in judgment, and could not be otherwise secured.

No transfer in writing was made or possession delivered, as in the case of real estate. The engine and fixtures were levied on as personal property, and Amos Earley claimed them as such in his notice to the sheriff. The very issue ordered and trying under the interpleader act imports that they are personal, as no such issue can be directed to determine the right to real estate. Amos Earley removed them before the sheriff's sale of the real estate, to prevent them from passing thereby. After all of these acts we are of the opinion that Amos Earley would have been estopped on the trial from averring that they were part of the realty. This, independent of the agreement of counsel as to the severance and sale. Fixtures, whether attached to the realty or not, may, by the consent or action of the parties, be treated as personal (10 Barr, 352; Id. 198; 4 H. 530; 3 H. 513).

After a trial on the merits, it is certainly too late to raise a question of this purely technical character against the whole action of the party now desirous of presenting it, and least of all should this be permitted in favor of Amos Earley if he became, as is averred, the purchaser of the real estate on which these articles had been situated. He having removed them before the sheriff's sale, would thus be permitted to hold without paying for them as realty.

One other question has been raised on the argument. Moses Earley states that this engine and machinery were not sold for a *fixed price*, but given to secure the thousand dollar note; and all that it would sell for in addition was to be his. This is proved by the plaintiff and is corroborated by the acts and subsequent declarations of both Moses and Amos, the former offering afterwards to sell it as his own; the latter declining to sell until he could consult with Moses. Being a mere pledge to secure a debt, not accompanied with any delivery or retention of possession of the article pledged, it was subject to levy as the property of the pledgor, and could be lawfully sold as his. Such a pledge is nothing more than a verbal mortgage of personal property, and until delivery passes no title. Even if delivered, the contingent reversionary interest of Moses could be sold. In every point of view, we are of the opinion that Amos Earley has failed to establish his right to recover the property in dispute, the issue was properly decided, and the motion for a new trial must be overruled.